Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DAY TO DAY IMPORTS, INC.,

*Plaintiff,*

v.

FH GROUP INTERNATIONAL, INC.,

*Defendants.*

Civil Action No. 18-14105

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This case concerns alleged copyright infringement in the sale of car seat covers. D.E. 1. Plaintiff Day to Day Imports, Inc., alleges that Defendant FH Group International, Inc. has infringed, and is currently infringing, on two of Plaintiff's copyrights for two-dimensional visual art designs that are incorporated into car seat covers. *Id.* Currently pending before the Court is Defendant's motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. D.E. 9. The Court reviewed the parties' submissions in support and in opposition[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion to dismiss is denied.

---

[1] Defendant's brief in support of its motion will be referred to as "Def. Br.," D.E. 9-1; Plaintiff's opposition will be referred to as "Pl. Opp'n," D.E. 17; Defendant's reply will be referred to as "Def. Reply," D.E. 19.

## I. INTRODUCTION[2]

Plaintiff, a California corporation, alleges that it owns two United States Copyright Registrations – VA 1-925-832 (the "832 Design") and VA 1-900-842 (the "842 Design") – on two original two-dimensional art designs (collectively the "Copyrighted Designs") that Plaintiff has since incorporated into car seat covers. Compl. ¶¶ 5, 10-12. Plaintiff alleges that it manufactures, markets, and sells the car seat covers with the Copyrighted Designs to thousands of customers across the United States via e-commerce websites. *Id.* ¶ 12. Defendant, a New Jersey corporation, also sells car seat covers across the United States via e-commerce websites. *Id.* ¶¶ 6, 16, 20, 23. Plaintiff alleges that Plaintiff never authorized Defendant to use the Copyrighted Designs. *Id.* ¶ 14. Nonetheless, Plaintiff alleges that Defendant has and is marketing, selling, and distributing car seat covers that incorporate the Copyrighted Designs on websites such as Amazon.com and Ebay.com. *Id.* ¶¶ 16, 20, 23. Plaintiff alleges that Defendants continue to sell these goods on Ebay.com even after receiving a Notice of Claimed Infringement on December 2, 2015, and even after Amazon.com removed Defendant's goods from its catalogue on January 9, 2016 in response to Plaintiff's Notice of Claimed Infringement. *Id.* ¶¶ 18, 20, 23.

On September 20, 2018, Plaintiff brought its Complaint, alleging one count: federal copyright infringement under 17 U.S.C. § 501. Compl. ¶¶ 25-34. On October 22, 2018, Defendant moved to dismiss this Complaint, arguing: (1) that the Complaint should be dismissed pursuant to

---

[2] The facts are derived from Plaintiff's Complaint. D.E. 1 ("Compl."). When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, a district court may consider "exhibits attached to the complaint," "document[s] integral to or explicitly relied upon in the complaint," "matters of public record," and "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because Plaintiff is not actually the owner of the Copyrighted Designs and therefore Plaintiff does not have standing to bring this suit; and (2) that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim because either (a) car seat cover designs cannot be copyrighted given that they are useful articles, or (b) Defendant's car seat cover designs are not substantially similar to Plaintiff's alleged Copyrighted Designs. Def. Br. at 5-6. Plaintiff opposed this motion, Pl. Opp'n, and Defendant replied, Def. Reply.

## II. LEGAL STANDARD

Rule 12(b)(1)

In deciding a Rule 12(b)(1) motion for lack of subject-matter jurisdiction, a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed.[3] A facial attack "contests the sufficiency of the complaint because of a defect on its face," whereas a factual attack "asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional prerequisites." *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (citing *Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 806 (E.D. Pa. 2015)). Here, Defendant asserts a factual attack. Def. Br. at 8.

A factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). Thus, "[i]n contrast to a facial challenge, a factual challenge allows 'a court [to] weigh and consider evidence outside the pleadings'" at the motion

---

[3] This Court also has an independent obligation to establish that it has subject-matter jurisdiction. *Morel v. INS*, 144 F.3d 248, 251 (3d Cir. 1998).

3

to dismiss stage. *Id.* (citing *Constitution Party*, 757 F.3d at 358). Still, "the plaintiff will have the burden of proof that jurisdiction does in fact exist," just "[n]o presumptive truthfulness attaches to [the] plaintiff's allegations[.]" *Id.* The district court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," and the district court's findings of fact related to jurisdiction will only be reviewed on appeal for clear error. *Id.*

As for a district court's power to hear the case, "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). One key aspect of this case-or-controversy requirement is standing. *See id.* "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa.*, 757 F.3d at 360. To establish standing, a plaintiff must satisfy a three-part test, showing: "(1) an 'injury in fact,' *i.e.*, an actual or imminently threatened injury that is 'concrete and particularized' to the plaintiff; (2) causation, *i.e.*, traceability of the injury to the actions of the defendant; and (3) redressability of the injury by a favorable decision by the Court." *Nat'l Collegiate Athletic Ass'n v. Gov. of N.J.*, 730 F.3d 208, 218 (3d. Cir. 2013).

Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability

4

requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## III. ANALYSIS

Defendant first argues that the Court does not have subject matter jurisdiction over the matter because Plaintiff does not have standing to bring the suit. Def. Br. at 8. Specifically, Defendant argues that Plaintiff does not have standing because Akiva Nourollah – not Plaintiff – is the owner of the Copyrighted Designs. *Id.* To support this argument, Defendant attaches to its motion to dismiss (1) the registrations of the Copyrighted Designs, D.E. 9-2; and (2) the search results for the Copyrighted Designs in the United States Copyright Office's Public Catalog as of October 17, 2018, D.E. 9-3. Both of these exhibits indicate that Akiva Nourollah is the owner of the Copyrighted Designs. *See* D.E. 9-2; D.E. 9-3. To rebut Defendant's assertion, Plaintiff attaches to its opposition two assignments signed by Akiva Nourollah, assigning the rights of the

5

Copyrighted Designs to Plaintiff on the date that these Copyrighted Designs were first registered (June 6, 2014 and August 15, 2013). D.E. 18-1.

"Ownership of a copyright is freely transferrable 'by any means of conveyance or by operation of law.'" *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 827 (3d Cir. 2011) (quoting 17 U.S.C. § 201(d)). A conveyance is valid if it is "in writing and signed by the owner of the rights conveyed." *Id.* (quoting 17 U.S.C. § 204(a)). Here, Plaintiff (aside from alleging that it has ownership rights over the Copyrighted Designs, Compl. ¶ 11) presents two written assignments signed by Akiva Nourollah transferring ownership rights of the Copyrighted Designs to Plaintiff on the dates of registration, D.E. 18-1.[4] Therefore, for purposes of Defendant's factual challenge to subject matter jurisdiction, the Court finds that Plaintiff has sufficiently demonstrated that it owns the Copyrighted Designs. Accordingly, Plaintiff, as owner, would suffer an injury-in-fact from infringement of these Copyrighted Designs, giving Plaintiff standing in this action. The Court has subject matter jurisdiction over the matter.[5]

Defendant next makes several arguments as to why Plaintiff fails to state a claim for copyright infringement. "To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203 (3d Cir. 2005) (quoting *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir.

---

[4] As noted above, under the Rule 12(b)(1) standard, the Court can weigh evidence outside of the pleadings to evaluate Defendant's factual challenge to subject matter. The Court also notes that the assignments are likewise considered under the Rule 12(b)(6) standard because they are implicitly relied upon in the Complaint, meaning a substantially similar review applies to both standards as they apply to this matter at this stage of the proceedings.

[5] Aside from standing, the Court notes that it has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331, as this case arises out of a federal question under 17 U.S.C. § 501.

2002)). As to the first element, Defendant again disputes whether Plaintiff is the owner of the Copyrighted Designs. Def. Br. at 9-11. As noted, the Court finds that Plaintiff sufficiently demonstrated that it is the owner of the Copyrighted Designs.[6] This case is distinguishable from *Kunkel v. Jasin*, 420 F. App'x 198 (3d. Cir. 2011), which Defendant relies upon, *see* Def. Br. at 12-13. In *Kunkel*, the Third Circuit found that the plaintiff did not own a valid copyright in the designs because a separate entity owned the designs at the time that the plaintiff registered the designs with the Copyright Office. 420 F. App'x at 200. Here, Plaintiff did not register the Copyrighted Designs while Akiva Nourollah owned them; instead, Akiva Nourollah registered the Copyrighted Designs and then subsequently transferred ownership rights to Plaintiff via valid assignments after registration and well before the events giving rise to this case. *See* D.E. 18-1.

Defendant further argues that the Copyrighted Designs are not valid copyrights because they are "useful articles." Def. Br. at 14. The Supreme Court in *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002 (2017), recently resolved the "widespread disagreement over the proper test" to be used in determining whether a "feature incorporated into the design of a useful article is eligible for copyright protection." *Id.* at 1007. The Supreme Court explained that "Congress has provided copyright protection for original works of art, but not for industrial designs." *Id.* Yet, the Court acknowledged, "[t]he line between art and industrial design . . . is often difficult to draw." *Id.* The *Star Athletica* Court continued that art, or "copyrightable subject matter," to which a valid copyright extends, is defined as "original works of authorship fixed in any tangible medium of expression." *Id.* at 1008 (2017) (quoting 17 U.S.C. § 102(a)). The Court

---

[6] As noted above, under the Rule 12(b)(6) standard, the Court accepts as true all factual allegations in the Complaint and can consider documents implicitly relied upon in the Complaint, such as the assignments.

7

continued that "[w]orks of authorship" include "pictorial, graphic, and sculptural works," such as "two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions," and more. *Id.* (quoting 17 U.S.C. §§ 101, 102(a)(5)). The Supreme Court further observed that a work of authorship is "fixed in a tangible medium of expression" when it is "embodied in a material object from which the work can be perceived, reproduced, or otherwise communicated." *Id.* (internal quotations and alterations omitted).

The Court in *Star Athletica* next explained that a "special rule" exists for copyrighting graphic work incorporated into a "useful article," to ensure that industrial designs are not provided copyright protection. *Id.* The Supreme Court defined "useful article" as "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." *Id.* The Court added that designs of a useful article are "considered a pictorial, graphical, or sculptural work" (i.e., are copyrightable) only if the designs "can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." *Id.* at 1007 (quoting 17 U.S.C. § 101). The Supreme Court referred to this crucial distinction as "separability." *Id.* For clarity, the Supreme Court set forth a two-part test to guide lower courts in determining whether a design in a "useful article" is art (and therefore copyrightable) or an industrial design (and therefore not copyrightable):

> [A]n artistic feature of the design of a useful article is eligible for copyright protection if the feature (1) can be perceived as a two- or three-dimensional work of art separate from the useful article and (2) would qualify as a protectable pictorial, graphic, or sculptural work either on its own or in some other medium if imagined separately from the useful article.

*Id.* at 1016; *see also id.* at 1010 (citing 17 U.S.C. § 101).

As to the first element, "separate identification," the *Star Athletica* Court explained that it "is not onerous." *Id.* at 1010. The Court explained that "[t]he decisionmaker need only be able to

8

look at the useful article and spot some two- or three-dimensional element that appears to have pictorial, graphic, or sculptural qualities." *Id.* The second element, "independent-existence," is "ordinarily more difficult to satisfy[,]" according to the Court. *Id.* The Supreme Court indicated that "[t]he decisionmaker must determine that the separately identified feature has the capacity to exist apart from the utilitarian aspects of the article." *Id.* The Court continued that "[i]n other words, the feature must be able to exist as its own pictorial, graphic, or sculptural work as defined in § 101 once it is imagined apart from the useful article." *Id.* The Court in *Star Athletica* added that "[i]f the feature is not capable of existing as a pictorial, graphic, or sculptural work once separated from the useful article, then it was not a pictorial, graphic, or sculptural feature of that article, but rather one of its utilitarian aspects." *Id.*

In *Star Athletica*, the plaintiff sold cheerleading uniforms and obtained over 200 copyright registrations for two-dimensional designs incorporated into the uniforms. *Id.* at 1007. The defendant also sold cheerleading uniforms, and the plaintiff alleged that the defendant's cheerleading uniforms infringed on five of plaintiff's copyrights. *Id.* The district court awarded summary judgement to the defendant, finding that the designs identified the garments as cheerleading uniforms and therefore could not be "physically or conceptually" separated from the utilitarian function of the uniform under Section 101. *Id.* at 1007-08 (citing *Varsity Brands, Inc. v. Star Athletica, L.L.C.*, 2014 WL 819422, *8-*9 (W.D. Tenn., Mar. 1, 2014)). The Sixth Circuit reversed. *Id.* (citing *Varsity Brands*, 799 F.3d at 491-92).

The Supreme Court affirmed the Sixth Circuit. *Id.* at 1016. Applying the two-part test to the surface decorations on the cheerleading uniforms, the Court first found that "one can identify the decorations as features having pictorial, graphic, or sculptural qualities," satisfying the first element. *Id.* at 1012. As to the second element, the Supreme Court found that "if the arrangement

of colors, shapes, stripes, and chevrons on the surface of the cheerleading uniforms were separated from the uniform and applied in another medium—for example, on a painter's canvas—they would qualify as two-dimensional works of art." *Id.* (internal quotations and alterations omitted). The Court in *Star Athletica* added that "imaginatively removing the surface decorations from the uniforms and applying them in another medium would not replicate the uniform itself." *Id.* The Court then noted that, "[i]ndeed, respondents have applied the designs in this case to other media of expression—different types of clothing—without replicating the uniform." *Id.* The Court therefore held that the designs were "separable from the uniforms and eligible for copyright protection." *Id.*

In reaching this conclusion, the majority refuted two important arguments regarding the second element. *Id.* at 1012. In his dissent, Justice Breyer argued that the designs were not separable because "imaginatively removing them from the uniforms and placing them in some other medium of expression—a canvas, for example—would create 'pictures of cheerleader uniforms.'" *Id.* (quoting *id.* at 1030 (Breyer J., dissenting)). Second, the defendant had argued that the designs could not be copyrighted because, even when extracted from the useful article, they retain the outline of a cheerleading uniform. *Id.* In response to these arguments, the majority explained that "[j]ust as two-dimensional fine art corresponds to the shape of the canvas on which it is painted, two-dimensional applied art correlates to the contours of the article on which it is applied." *Id.* The majority continued,"[a] fresco painted on a wall, ceiling panel, or dome would not lose copyright protection, for example, simply because it was designed to track the dimensions of the surface on which it was painted." *Id.* Similarly, the majority continued, "if a design etched or painted on the surface of a guitar" is "imaginatively removed from the guitar's surface and placed on an album cover, it would still resemble the shape of a guitar," but "the image on the

10

cover does not 'replicate' the guitar as a useful article." *Id.* Instead, the majority reasoned, "the design is a two-dimensional work of art that corresponds to the shape of the useful article to which it was applied." *Id.* The majority then concluded that "[t]he statute protects that work of art whether it is first drawn on the album cover and then applied to the guitar's surface, or vice versa," as "[f]ailing to protect that art would create an anomaly: It would extend protection to two-dimensional designs that cover a part of a useful article but would not protect the same design if it covered the entire article." *Id.* Thus, the majority found that the arguments made by Justice Breyer and the defendant as to why plaintiff failed to meet this second element were untenable. *Id.* at 1012-13.[7]

Here, the same conclusion is warranted. The Copyrighted Designs are incorporated in car seat covers. Compl. ¶ 12. Defendant argues, and Plaintiff does not dispute, that car seat covers are useful articles. Def. Br. at 14; Pl. Opp'n at 9-11. The Court therefore accepts, for purposes of this motion, that car seat covers are useful articles,[8] and applies the *Star Athletica* two-part test. As to the first element, the Court can look at the Copyrighted Designs and spot two-dimensional designs incorporated into the seat covers. The 832 Design has a colored rectangle at the headrest, a colored "H" pattern across the backrest, and colored parallel lines spanning the side of the seat.

---

[7] Defendant also cites to three circuit court decisions evaluating separability for support of its argument. *See* Def. Br. at 14-17 (citing *Jovani Fashion, Ltd. v. Fiesta Fashions*, 500 F. App'x 42 (2d Cir. 2012); *Norris Indus. v. Int'l Tel. & Tel. Corp.*, 696 F.2d 918 (11th Cir. 1983); and *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 739 F.3d 446 (9th Cir. 2014)). However, all three decisions were pre-*Star Athletica*, where the Supreme Court clarified the appropriate test to be used.

[8] The Court recognizes that car seat covers have utilitarian functions: they can be used to protect car seats from damage; they can be used to increase comfort; and they can be used to increase functionality, by adding pockets or compartments for example. On the other hand, depending on the particular car seat cover, covers can also arguably have a solely ornamental use: they can increase the aesthetic appeal of the interior of the car by displaying appealing designs. Nonetheless, the Court accepts that car seat covers as useful articles for purposes of the current motion.

11

Compl. ¶ 21. The 842 Design has a colored "H" design that narrows towards the bottom across the backrest and two narrow, colored triangles positioned on the seat. *Id.* Thus, the Copyrighted Designs meet the "separate identification" element.

The second element of the *Star Athletica* test is also met. If the arrangement of colored geometrical shapes on the surface of the car seat were separated from the car seat medium and placed on a canvas, they would qualify as two-dimensional works of art. It does not matter that such image on the canvas may resemble a car seat or a picture of a car seat – the image still would not replicate a car seat as a useful article. The usefulness of the car seat is the contour of the fabric so that it fits snug over the seat; this is separable from the colored graphical shapes placed on this fabric for decoration. These designs add nothing to the utilitarian function of the car seat cover. The second element of the *Star Athletica* test, independent existence, is satisfied. Thus, Plaintiff plausibly established the first element of its trademark infringement claim.

As to the second element of Plaintiff's trademark infringement claim, unauthorized copying, Defendant argues that Plaintiff fails to meet this element because Defendant's designs are not "substantially similar" to Plaintiff's Copyrighted Designs. Def. Br. at 18-26. The Third Circuit recently explained the nuances in analyzing whether two designs are "substantially similar." *See Tanksley v. Daniels*, 902 F.3d 165, 173 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 1175, *reh'g denied*, 139 S. Ct. 1596 (2019). The Third Circuit noted that the "second element— unauthorized copying—itself comprises two (frequently conflated) components: actual copying and material appropriation of the copyrighted work." *Id.* at 173 (citing *Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998)). The Circuit explained that "[a]ctual copying focuses on whether the defendant did, in fact, use the copyrighted work in creating his own." *Id.* The court in *Tanksley* explained that "[i]f the defendant truly created his work

independently, then no infringement has occurred, irrespective of similarity." *Id.* (citing *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 110 (2d Cir. 2001); *Fred Fisher, Inc. v. Dillingham*, 298 F. 145, 151 (S.D.N.Y. 1924) (L. Hand, J.)). However, the Third Circuit noted, direct evidence of copying is rare so this component "may instead be shown through circumstantial evidence of access and similarity." *Id.*

The *Tanskley* court then observed that "[t]here is a critical, though often misunderstood, distinction between 'substantial similarity' with respect to copying and 'substantial similarity' with respect to material appropriation." *Id.* The Circuit continued that "[t]wo works can be 'substantially similar' so as to support an inference of copying, yet not 'substantially similar' in the sense that the later work materially appropriates the copyrighted work." *Id.* (citing *Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 907 (3d Cir. 1975)). To clearly mark this distinction, the Third Circuit "prefer[s] the term 'probative similarity' in the copying context, while reserving 'substantial similarity' for the question of material appropriation." *Id.* (citing *Dam Things from Denmark, a/k/a Troll Co. ApS, v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 562 (3d Cir. 2002)). To determine whether a probative similarity exists, the Circuit indicated that "the finder of fact may consider any aspect of the works that supports an inference of copying, even elements that are incapable of copyright protection." *Id.* (citing *Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 139-40 (2d Cir. 1992)). Conversely, the court in *Tanksley* wrote, "when assessing material appropriation, i.e., substantial similarity, only similarities in protectable expression may be considered." *Id.* (citing *Laureyssens*, 964 F.2d at 139-40).

The Third Circuit next indicated that material appropriation occurs when the copier's work "is substantially similar to the protected elements of the copyrighted work." *Id.* at 174. The *Tanksley* court explained that "substantial similarity asks whether a lay-observer would believe

that the copying was of protectible aspects of the copyrighted work." *Id.* (citing *Dam Things from Den.*, 290 F.3d at 562; *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) (L. Hand, J.)) (internal quotations omitted). The Circuit noted that "[t]o answer this question, the trier of fact performs a side-by-side comparison of the works and, excluding any unprotectable elements, assesses whether the two works are substantially similar." *Id.* (citing *Dam Things from Den.*, 290 F.3d at 566).

Here, as noted, Defendant alleges that its work is not "substantially similar" to the Copyrighted Designs.[9] The Court disagrees. When the 832 Design is placed side-by-side Defendant's design, both designs have a colored rectangle at the headrest, a colored "H" pattern with the same curvature across the backrest, and colored parallel lines spanning the side of the seat. Compl. ¶ 21. Similarly, when the 842 Design is placed side-by-side Defendant's design, both designs have a colored "H" pattern that narrows towards the bottom across the backrest and two narrow, colored triangles positioned similarly on the seat. *Id.* Defendant's designs and the Copyrighted Designs are virtually indistinguishable aside from the color schemes. The Defendant's designs do not have any additional shapes or altered configurations distinguishing them from the Copyrighted Designs; both sets of designs are composed of the same shapes in the

---

[9] Defendant does not clarify whether it is referring to substantial similarity, or probative similarity, in the actual copying component or in the material appropriation component (still "substantial similarity"). The Court assumes that Defendant is referring to substantial similarity in the material appropriation component given its usage of the term *substantial* similarity, rather than *probative* similarity. However, the Court notes that to the extent Defendant is arguing against probative similarity, probative similarity is met for the same reasons that substantial similarity is met (as probative similarity considers all elements that substantial similarity considers and more). Additionally, Plaintiff alleges, and Defendant does not dispute, that "[b]efore the infringement complained of herein, [Defendant] obtained directly from Plaintiff products incorporating the [Copyrighted] Designs." Compl. ¶ 15. Given this allegation (showing evidence of access) and the similarity between the products, the Court infers actual copying, satisfying the first component to the extent that Defendant disputes it at this stage.

same configuration. Thus, it is plausible that a lay observer would find that the artistic aspects of Defendants' car seat cover design are substantially similar to the protectable aspects of the Copyrighted Designs. Accordingly, Plaintiff has plausibly plead a claim for copyright infringement.

## IV. CONCLUSION

In sum, the Court denies Defendant's motion to dismiss Plaintiff's Complaint, D.E. 9. An appropriate Order accompanies this Opinion.

Dated: July 2, 2019

                                                           John Michael Vazquez, U.S.D.J.